Law Office of G. Anthony Long
P. O. Box 504970, Second Floor Lim's Bldg.
San Jose, Saipan, MP 96950
Telephone No. (670) 235-4802
Facsimile No. (670) 235-4801

Attorney for Defendant Fermina Atalig

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL ACTION NO. 05-0004 |
| Plaintiff | ) MEMORANDUM SUPPORTING |
| | ) MOTION FOR JUDGMENT OF |
| v. | ) ACQUITTAL |
| FERMINA M. ATALIG | ) |
| | ) Date: May 18, 2006 |
| Defendant | ) |
| | ) Time: 9:00 a.m. |

## I.   ATALIG IS ENTITLED TO ACQUITTAL ON ALL COUNTS

FRCrP Rule 29 provides for a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on one or more offenses charged in the indictment. *United States v. Young*, 2005 WL 1313448 at 1 - 4 (E.D.Wash. 2005). In evaluating the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution and determines whether a reasonable fact finder could find the essential elements of the charged crime beyond a

reasonable doubt. *Id.* Pursuant to this standard, mere suspicion or speculation cannot be the basis for the creation of logical inferences to substantiate conviction. *United States v. Thomas*, 453 F.2d 141, 143 (9th Cir. 1971). Likewise, the mere presence of relevant evidence is not enough to deny acquittal. See *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S. ct. 2781, 2789 (1979). The relevant evidence establishing each essential element of the crime must be more than a "mere modicum" *Id*, 443 U.S. at 320, 99 S. Ct. at 2789, it must be sufficient. *Id*, 443 U.S. at 316, 99 S. Ct. at 2787. Sufficient proof consists of evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the crime. *Id.* Thus, there must be substantial evidence establishing the existence of each essential element of the charged crime. *United States v. Bazuaye*, 240 F.3d 861, 863 (9th Cir. 2001)[On a challenge to the sufficiency of the evidence, the standard is whether there is substantial evidence to support the conviction.]. As stated in *United States v. Orrico*, 599 F.2d 113 (5th Cir. 1979):

> Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.

599 F.2d at 117 quoting *United States v. Green*, 548 F.2d 1261, 1266 (6th Cir. 1977).

The evidence in this case is insufficient to support a guilty verdict on any count.

## II        ATALIG IS ENTITLED TO ACQUITTAL ON ALL COUNTS

To sustain a conviction under 18 U.S.C. § 1001, the prosecution must prove a statement, falsity, materiality, specific intent, and agency jurisdiction. *United States v. Camper* 384 F.3d 1073 (9th Cir. 2004). The evidence produced at trial fails to establish each element beyond a reasonable doubt.

### A.   THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION ON THE CHARGES INVOLVING FLAVIAN HOCOG, COUNT 2, DEXTER MENDIOLA, COUNT 3, AND RYAN MANGLONA, COUNT 8

Criminal responsibility is generally premised on direct liability or vicarious liability. *United States v. Michaels*, 796 F.2d 1112, 1118 n. 2 (9th Cir. 1986). *See United States v. Tarallo*, 380 F.3d 1174, (9th Cir. 2004). Direct liability exists when the defendant herself commits all of the elements of a criminal offense. *Michaels, supra. See Tarallo*, 380 F.3d at 1181 - 1183. Vicarious liability, on the other hand, is when criminal liability is imputed to a defendant based on acts or conduct of others. *Michaels, supra. See Tarallo*, 380 F.3d at 1183.

In this case, the evidence establishes that Atalig did not prepare, review or

approve the DUA applications of Flavian Hocig ("Hocog"), Ryan Manglona ("Manglona") and Dexter Mendiola ("Mendiola"). Angie Manglona prepared, reviewed and approved those DUA applications. See Exhibits 2, 2A, 3, 3A, 4, and 4A. There is not any evidence showing beyond a reasonable doubt that Atalig knew the contents of those applications much less that she knew the contents were false. Thus, Atalig's conviction on the counts involving the applications of those individuals must be premised upon vicarious liability.

The indictment charged vicarious liability on two theories, aiding and abetting and conspiracy. At trial, the prosecution did not pursue the aiding and abetting theory and that theory was dismissed by the court. Accordingly, the jury was not instructed on aiding and abetting. This leaves conspiracy as the sole basis for imposition of vicarious liability.

Under conspiracy jurisdiction, the substantive offense of one co-conspirator committed in furtherance of the conspiracy is imputed to the other conspirators. *Pinkerton v. United States*, 328 U.S. 640, 645-48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)[Each participant in a conspiracy is liable for the actions of co-conspirators when such actions are undertaken in furtherance of the goals of the conspiracy]. However, a substantive conviction cannot be upheld under *Pinkerton* unless the jury was given a *Pinkerton* instruction. *United States v. Mills,* 810 F.2d 907, 910

(9th Cir. 1987); *United States v. Disla*, 805 F.2d 1340, (9th Cir. 1986); *United States v. Batimana*, 623 F.2d 1366, 1369-70 n. 2 (9th Cir. 1980); *United States v. Murray*, 492 F.2d 178, 187 (9th Cir. 1973)overruled on other grounds by *United States v. Cook*, 608 F.2d 1175 (9th Cir. 1979)(en banc); *United States v. Polk*, 56 F.3d 613, 619 n. 4 (5th Cir. 1995);*United States v. Corley*, 824 F.2d 931, 936 n. 10 (11th Cir. 1987).

A Pinkerton instruction was neither requested nor given to the jury. This means Atalig could not be guilty of the substantive offenses or acts committed by others. *Id.* As a result, the evidence is insufficient for a conviction on Counts 2, 3 and 8.

### B. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTIONS ON COUNTS 2 - 8

#### 1. AGENCY JURISDICTION WAS NOT PROVED BEYOND A REASONABLE DOUBT

To establish agency jurisdiction, the false statement cannot relate to matters that are peripheral to the function of a federal department or agency. *United States v. Facchini*, 874 F.2d 638, 641 (9th Cir. 1989)(en banc). Instead, this element requires the prosecution to prove a direct relationship exists between the materially false statement and an authorized function of a

federal agency or department. *Id* at 641 - 642.

In instructing the jury on the substantive counts of the indictment, Jury Instruction No. 29, instructed that to convict on the substantive counts, the jury had to find beyond a reasonable doubt that false statements were within the jurisdiction of the Federal Emergency Management Agency ("FEMA"). The evidence does not show a direct relationship and an authorized function of FEMA.

The evidence establishes that the United States Department of Labor ("USDOL") administers the DUA program. Indeed, it was USDOL who sent an employee to Rota to conduct DUA training. The handbook used in administering the DUA program was prepared and promugated by USDOL. The documents concerning administration of the DUA program were forwarded to USDOL. Exhibit 18. The certification above the signature line on each DUA application provides for disclosure of the application information to USDOL. If federal prosecution is appropriate in connection with DUA, then the matter is referred to the USDOL Regional Inspector General for Investigation. Exhibit 13 at VII - 4. Requests for extension of the DUA program were made to USDOL and USDOL is the agency which approved the extension. Exhibits X, Y, and AA. The evidence, therefore,

shows that the statements at issue in this case had a direct relationship with an authorized and official function of USDOL and not FEMA. This entitles Atalig to an acquittal on the substantive charges contained in counts 2-8 of the indictment.

## 2. THE EVIDENCE DOES NOT SHOW BEYOND A REASONABLE DOUBT THAT ATALIG KNOWINGLY AND WILLFULLY USED A FALSE DOCUMENT

The materiality element requires proving beyond a reasonable doubt that the statement is material. A statement is material if it "(1) could affect or influence the exercise of governmental functions; or (2) has a natural tendency to influence or is capable of influencing agency decisions." *United States v. Facchini*, 874 F.2d 638, 643 (9th Cir.1989)(en banc). Based on this definition, the Mayor's certification is not material for purposes of the DUA program.

Angie Manglona testified at trial that the Mayor's certification were placed in the files because the Office of Public Auditor was coming to take possession of the files. There is not any evidence suggesting that the OPA stood in the "shoes" of FEMA. Moreover, the prosecution did not present any evidence that the Mayor's Certificate, as opposed to the DUA

applications, had any tendency to influence the actions of FEMA. As such, the Mayor's Certifications are not material and are insufficient to sustain a conviction for the indictment's substantive counts. See 20 CFR 625.9(a)(2)[Affidavit submitted to state agency and form prescribed by Secretary only documents necessary to establish eligibility in absence of other records not obtainable]. This means the substantive convictions must rest on the DUA applications and affidavits. See Exhibits 1A, 1B, 2A, 2B, 3A, 3B, 4A, 4B, 5A, 5B, 6A, 6B, 7A, and 7B.

It has been said that the crime of making a false statement is unique in that there is no separately demonstrable actus reus. *United States v. Manapat*, 928 F.2d 1097, 1101 (11th Cir. 1991). The *actus reus* and the *mens rea* unite into a single inquiry: Did the defendant know the statement was false when made?" *Id.* In seeking to prove a false statement charge, the prosecution cannot isolate the statement from the context in which it was given. *Id.* Moreover, when the questions are deemed to be fundamentally ambiguous under the circumstances in which it is asked, then an inaccurate answer does not result in false statement for purposes of § 1001 as a matter of law. *United States v. Bussell*, 414 F.3d 1048, 1057 (9th Cir. 2005). *See Manapat*, 928 at 1102 ["We merely hold that the government may not

LAW OFFICE OF G. ANTHONY LONG
P.O. Box 504970, 2nd Floor Lim's Building
San Jose, Saipan, MP 96950
Tel. No: (670) 235-4802   Fax No: (670) 235-4801

provide someone with a confusing and ambiguous form and then prosecute when the answers are inaccurate."]. This occurs as courts "cannot allow juries to criminally convict a defendant based on their guess as to what the defendant was thinking at the time the response was made." A question is fundamentally ambiguous when men of ordinary intellect can not agree on its meaning. *Camper*, 384 F.3d at 1076 - 1078. When a question is merely ambiguous or having more than one plausible meaning, it is subject to the sufficiency of the evidence test, *See Camper* at 384 F.3d at 1078. Nevertheless, in determining whether the answer to a question which is ambiguous, but not fundamentally ambiguous, consideration must be given to the context of the question and answers, as well as other extrinsic evidence relevant to the defendant's understanding of the questions posed in the form. *United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003).

In this case, the answers to application questions A1 - 6 which concern self-employment appear to be the statements which give rise to the materially false statements found by the jury. *See* Exhibits 1A, 2A, 3A, 4A, 5A, 6A, and 7A. The question is fundamentally ambiguous under the circumstance or alternatively, the evidence does not show beyond a reasonable doubt that the answers are materially false.

The evidence does not show that Atalig actually knew the material statements in the applications of Mendiola, Manglona, Hocog, Rosario, Weilbacker, Ramos and Atalig Nanette were, in fact, false. This mens that Atalig could not have knowingly and willfully used a false document in connection with their claims. Indeed, given the definition of "self-employed" the evidence is insufficient to show beyond a reasonable doubt that Atalig knowingly and willfully used false documents.

DUA defines the term "self-employed individual" as "an individual whose primary reliance for income is on the performance of services in the individuals own business, or in the individuals, own farm." 20 CFR 625.2(n); Exhibit 13 Appendix B at 2-3. At this point it is important to note what is not necessary for a person to be deemed a "self-employed individual." The definition does not require the services performed be sufficient to support the individual's living needs. It does not require the person to be the head of a household. It does not preclude the person from receiving support from other family members. It does not require that the individual work any number of hours in a week in order to be a self-employed individual. A person is not required to earn any minimum amount of income or money in any given week in order to be a self-employed

individual. Also, there is not any requirement that the person have been self-employed for any length of time before the major disaster. It does not exclude a full-time student from being a self-employed individual. The only requirement for being deemed self-employed or a farmer is that self-employed services be the primary reliance for income.

Given this definition, the evidence is insufficient to show that Mendiola and Manglona were not self-employed. Manglona testified that he owned a 10,000 square meter agricultural homestead on which he grew crops some of which he sold. Based on the evidence at trial, Manglona did not have any income other than the income he received from selling the crops grown on his homestead. The evidence establishes that Supertyphoon Pongsona prevented Manglona from working his agricultural homestead. This evidence shows Manglona was an unemployed self-employed individual. *See* 20 CFR § 625.2(t).

Similarly, the evidence shows that Mendiola operated his own t-shirt business and that the business was his primary source of income[1]. The evidence further shows that Mendiola did in fact sell his t-shirts on Rota.

---

[1] The fact that he received some support from his parents is irrelevant.

Mendiola also testified that Supertyphoon Pongsona prevented him from selling his t-shirts on Rota. This evidence shows Mendiola was an unemployed self-employed individual. *See* 20 CFR § 625.2(t).

With respect to Hocog, Ramos, Weilbacker, and Nanette Atalig, they each testified that before Pongsona they performed services on a family farm or in the case of Hocog, assisted her father in fishing. There is not any evidence to show that Atalig knew that persons who performed services for a family business did not constitute a self-employed individual for DUA purposes.

### III. THE EVIDENCE DOES NOT SUPPORT CONVICTION FOR CONSPIRACY

The essential elements of a conspiracy are (1) an agreement to accomplish an illegal objective; (2) the commission of an overt act in furtherance of the conspiracy; and (3) the requisite intent necessary to commit the underlying offense. *United States v. Taren-Palma*, 997 F.2d 525, 536 (9th Cir.1993). At the conclusion of the trial, the prosecution stated Manglona is the only person with whom Atalig conspired. The evidence fails to establish each of these elements beyond a reasonable doubt.

Although an agreement may be inferred from the defendant's acts or from other circumstantial evidence, "simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient." *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir.1980). In this case, the only evidence of an agreement between Atalig and Angie Manglona is Manglona's testimony that Fermina asked her to help the people of Rota. Although Manglona testified under a non-prosecution agreement, she never stated that she had an agreement with Atalig to submit false statements. More telling, is that Manglona testified that she advised Atalig of a person who was a high school student who was receiving benefits and Atalig informed her she would stop payment on the check. Manglona further testified that she inquired with Atalig about Mendiola's eligibility to receive DUA because he did not live on Rota. Atalig advised her that Mendiola had a t-shirt business that sold t-shirts on Rota. This evidence is insufficient to show beyond a reasonable doubt that an agreement to submit false statements existed between Atalig and Manglona.

Also, the record is void of any intent by Manglona to defraud the United States. Manglona never testified that she intended to defraud or cheat

the United States. Even more so, according to Manglona, she did not have any knowledge on how the DUA program worked. In the absence of any such knowledge, Manglona was not able to formulate the requisite intent.

In any event, Jury Instruction No. 27 informed the jury that the conspiracy involved submitting false statements in a matter within the jurisdiction of FEMA. As shown above, the statements in this case were within the jurisdiction of USDOL and not FEMA.

## CONCLUSION

The evidence is insufficient to sustain Atalig's convictions for the substantive offenses or the conspiracy charge.

Law Office of G. Anthony Long

By: _____
G. Anthony Long