FILED
Clerk
District Court

APR 13 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

LEONARDO M. RAPADAS
United States Attorney
TIMOTHY E. MORAN
Assistant U.S. Attorneys
DISTRICT OF THE NORTHERN
    MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone: (670) 236-2982
Fax:       (670) 236-2985

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN MARIANA ISLANDS

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 05-00004 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S |
| v. | ) | MOTIONS FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL |
| FERMINA ATALIG, | ) | |
| | ) | Date: May 18, 2006 |
| Defendant. | ) | Time: 9:00 a.m. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Leonardo M. Rapadas, United States Attorney, and Timothy E. Moran, Assistant United States Attorneys, and hereby files its memorandum in opposition to the defendant's motions for judgment of acquittal and a new trial.

I.     THE DEFENDANT IS NOT ENTITLED TO A NEW TRIAL.

    A.     Standard of Review

    Under Fed. R. Crim. P. 33, the Court may grant a motion for new trial only if required in the interests of justice. However, the burden of justifying a new trial rests on the defendant. United States

v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986). The final decision whether to grant a new trial lies within the discretion of the Court. United States v. Powell, 955 F.2d 1206, 1209 (9th Cir. 1992).

### B. The Court Did Not Improperly Fail To Take Judicial Notice.

The defendant asserts that error occurred because the Court did not take judicial notice of the date of Ricardo Atalig's conviction. No error occurred because there was no fact of which the Court could take notice. Immediately after the defendant made her request, the Court replied that it *could* take judicial notice of the fact if it knew the date of his conviction. Furthermore, the defendant could not supply the date itself. The defendant also never attempted to introduce a certified copy of the judgment, which was available from the clerk's office at any time during trial. Accordingly, the Court did not err when it did not take judicial notice of the date of Ricardo Atalig's conviction. Fed. R. Evid. 201(d) ("A court shall take judicial notice if requested by a party *and supplied with the necessary information*.").

The defendant also cannot show prejudice because the date of Ricardo Atalig's conviction would not have challenged Angie Manglona's credibility or demonstrate a good faith defense, as the defendant argues. The crucial date for that inquiry would be the date of Ricardo Atalig's indictment, which happened before the DUA program began. As soon as Ricardo Atalig was indicted, the real possibility existed that his seat would open. Accordingly, the date of Ricardo Atalig's conviction would not have the impact that the defendant argues.

### C. Evidence of Ricardo Atalig's Conviction Was Not Improperly Admitted.

The defendant also argues that, although evidence of the *date* of Ricardo Atalig's conviction was improperly excluded, evidence of the *crime* of conviction was improperly admitted. In addition to trying to have it both ways, the defendant's argument fails because she opened the door to that information on cross examination. Furthermore, while there is no basis to suppose that the jury drew any comparison between the defendant and Ricardo Atalig, any such comparison would have been suggested by the defendant's line of questioning.

2

D. <u>Testimony and Argument Concerning the Defendant's Senate Run Was Proper.</u>

The defendant accuses the government of intentionally introducing false evidence of a conversation between Angie Manglona and the defendant in which the defendant discussed her intention to run for a seat in the CNMI Senate. The defendant suggests that, because Ricardo Atalig was convicted in April 2003 and because she did not file papers with the election committee in August 2003, she could not have discussed her intention to run for the Senate with Angie Manglona in December, 2002. This suggestion neither makes sense nor comports with the facts of this case. The defendant undoubtedly harbored ambitions to run for the Senate before she filed her papers and likely even before Ricardo Atalig was indicted. Ricardo Atalig's indictment may have triggered the defendant's intention and subsequent conversation with Angie Manglona. In any event, the defendant's theories do not disprove Angie Manglona's testimony and the government properly introduced the evidence.

Instead of proving categorically that Angie Manglona *could not* have told the truth, the inference that the defendant attempts to draw – which the evidence does not support – would only undermine Angie Manglona's credibility. That determination is exclusively the province of the jury. <u>United States v. Rojas</u>, 554 F.2d 938, 943 (9th Cir. 1977). In fact, the defendant could have used the documents which the defendant suggests disprove Angie Manglona's statement during cross examination and thereby submitted the question to the jury. An unproven inference cannot now serve as grounds for a new trial.

E. <u>The Court's Identification of Witnesses During *Voir Dire* Was Proper.</u>

The Court properly identified the anticipated witnesses during *voir dire*; that such identification included their current addresses was not improper because the Court did not make any suggestion as to where they lived during from December 2002 to April 2003, the dates relevant to the trial. For example, the defendant objects to the location of Dexter Mendiola on Saipan but the evidence proved that he lived on *Guam* during and after Typhoon Pongsona. Accordingly, the Court's mention of Saipan during *voir dire* could not have influenced the evidence in any way. In addition, the defendant objects to the identification of "Henry San Nicholas" [sic] from Guam. Henry San Nicholas was not a witness at the

trial but the defendant's confusion further demonstrates the need to supply information such as an address during *voir dire* so that the jury does not confuse trial witnesses with other people of the same name.

II.     THE DEFENDANT IS NOT ENTITLED TO A JUDGMENT OF ACQUITTAL.

   A.     Standard

In deciding a motion under Fed. R. Cr. P. 29(c) for judgment for acquittal after the jury returned a verdict of guilty, the Court "must look to all the evidence, and, when taken in the light most favorable to the government, determine whether 'a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" United States v. Guthrie, 814 F.Supp. 942, 944 (E.D. Wash. 1993), quoting United States v. Alston, 974 F.2d 1206, 1210 (9th Cir. 1992). The Court "must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." Rojas, 554 F.2d at 943, quoting United States v. Nelson, 419 F.2d 1237, 1242 (9th Cir. 1969).

   B.     The Evidence on Counts Two, Three, and Eight Was Sufficient.

The Court did not charge the jury on any theories of vicarious liability as the government proved and the jury found direct liability on each count of conviction. The defendant argues that the evidence on counts two (Flavian Hocog), three (Dexter Mendiola) and eight (Ryan Manglona) did not prove use and knowledge and was therefore insufficient. The defendant is wrong. The evidence clearly demonstrated that the defendant *used* each false statement when she approved the applications and added the applicants' names to the list for the issuance of checks. Furthermore, the evidence demonstrated knowledge on each count: among other things, Flavian Hocog testified that the defendant knew her, knew that she was not a farmer, and told her to apply for benefits anyway; Angie Manglona told the defendant that Dexter Mendiola lived on Guam; and Ryan Manglona testified that the defendant knew him and everyone else on Rota. Accordingly, there was a sufficient basis for the jury to convict on each count.

4

C. <u>The Evidence of Agency Jurisdiction Was Sufficient.</u>

The defendant's argument that the evidence for agency jurisdiction was insufficient also fails. Alfred Pangelinan and Diane Hoff both testified at length that FEMA provided the money to fund the DUA program and that DOL administered the DUA program for FEMA. The various exhibits referenced by the defendant merely documented that delegation of responsibility. In any event, this evidence should have been argued to the jury and does not require acquittal.

D. <u>The Evidence of Knowledge Was Sufficient.</u>

The defendant's arguments boil down to two points: first, that the jury relied on the answers to questions 1 through 6 on the DUA Applications as the only materially false documents; and second, that the Applications were so ambiguous that she could not have *knowingly* used a false document. Both contentions are false.

First, in the special interrogatory for the conspiracy count, the jury specifically identified three false documents for each count: the Mayor's Certification, the DUA Application, and the Affidavit for each applicant. While the defendant disputes the materiality of the Certifications, she ignores the Affidavits. Even crediting the defendant's arguments, the Affidavits alone would provide a sufficient basis for each conviction. Furthermore, the Certifications were material: they were a part of the defendant's attempt to conceal her fraud.

Second, the Application was not so ambiguous that neither the defendant nor the jury could understand that the answers therein were false. The Application contained "common terms readily understandable by the jury." <u>United States v. Hicks</u>, 217 F.3d 1038, 1045 (9th Cir. 2000). The defendant's attempt to parse those terms begs the real question because the evidence demonstrated that, one, the witnesses understood that the answers were false; and two, the defendant knew that those answers were false. The defendant already argued her inferences to the jury, which did not adopt them. The defendant now attempts to invade the province of the jury; however, the evidence of knowldege was sufficient for a rational trier of fact to find knowledge.

5

E.  The Evidence of Conspiracy Was Sufficient.

The defendant finally argues that there was no evidence of an agreement between the defendant and Angie Manglona to use false documents and submit false claims against the United States. There was sufficient evidence of the agreement: Angie Manglona testified that she repeatedly did what the defendant asked of her. For example, she testified that she filled out Flavian Hocog's application because Hocog told her that the defendant had sent her. Furthermore, Angie Manglona acted knowing that what she was doing was wrong, that it was intended to cause others to receive DUA benefits falsely, and that the defendant asked her to do so in part to further her political ambitions and to enhance her standing in the community. While Angie Manglona never testified in so many words that she intended to cheat the United States, she did testify that she knowingly used the false documents to substantiate claims for DUA benefits – in effect, that she intended to commit offenses against the United States. This evidence is sufficient to permit a rational trier of fact to infer that the defendant agreed with Angie Manglona.

III. CONCLUSION

For the reasons stated above, the Court should deny the defendant's motions for judgment of acquittal and new trial.

Dated: April 13, 2006
       Saipan, CNMI

Respectfully submitted,

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and the NMI

By: _____
TIMOTHY E. MORAN
Assistant United States Attorney

6