Law Office of G. Anthony Long
P. O. Box 504970, Second Floor Lim's Bldg.
San Jose, Saipan, MP 96950
Telephone No. (670) 235-4802
Facsimile No. (670) 235-4801

Attorney for Defendant

FILED
Clerk
District Court

APR 21 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL ACTION NO. 05-0004 |
|  | ) |
| Plaintiff | ) |
|  | ) **REPLY MEMORANDUM** |
| v. | ) **SUPPORTING POST TRIAL** |
|  | ) **MOTIONS** |
| FERMINA ATALIG | ) |
|  | ) Date: May 18, 2006 |
| Defendant | ) |
|  | ) Time: 9:00 a.m. |

**I.   THE COURT SHOULD GRANT ACQUITTAL**

In a prosecution for a false statement, the prosecution must prove beyond a reasonable doubt that the statement related to a matter over which a federal agency had the power to act. *United States v. Stringer*, 2005 WL 1231183 at 4 (D.Or. 2005). Indeed, *United States v. Facchini*, 874 F.2d 638 (9th Cir. 1989) makes it clear that to trigger agency jurisdiction the agency must have the power to act. The indictment charged and the jury returned a verdict that the false statements at

issue in this case were within the jurisdiction of the Federal Emergency Management Agency ("FEMA"). However, the evidence produced at trial establishes that the statements at issue were within the jurisdiction of the United States Department of Labor ("USDOL") and not FEMA. The prosecution incorrectly contends that the evidence was sufficient to show the statements were within FEMA jurisdiction. *See e.g. United States v. Lesperance*, 25 F.3d 553 (7th Cir. 1994) abrogated on other grounds by *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310 (1995). *Lesperance* concerned a false statement given in connection with a low interest business loan made available in Milwaukee, Wisconsin after it was declared a federal disaster area due to flooding. The loan was given and administered by the Small Business Administration operating under the aegis of the Federal Emergency Management Agency. Defendant was convicted for willfully making a material false statement to the SBA. 25 F.3d at 554. In upholding the conviction the appeals court noted that the evidence contributed to a finding that defendant deliberately lied to the SBA to induce it to disburse proceeds of the loan to him. 25 F.3d at 557. Just as the SBA was the agency for purposes of the jurisdictional element in *Lesperamce*, USDOL was the agency for jurisdictional purposes in this case.

In its opposition to Atalig's motion, the prosecution does not point to or

identify any evidence which shows FEMA had the power to act in connection with the statements in this case. As Atalig points out in her moving memorandum, the evidence shows that only USDOL, and not FEMA, had the power the act. The evidence, therefore, is insufficient to show the statements were within the agency jurisdiction of FEMA for purposes of § 1001.

Additonally, upholding Atalig's conviction would, in effect, constitue an improper amendment of the indictment given the fatal variance between the indictment and the proof at trial. *See United States v. Choy*, 309 F.3d 602, 607 - 608 (9th Cir. 2002).

In any event, to be convicted under § 1001 the prosecution must prove that the statement was intentionally made with the knowledge that it is false. *United States v. Vaughn*, 797 F.2d 1485, 1490 (9th Cir. 1986). The prosecution does not dispute or contest that a Pinkerton instruction was not given to the jury. This means Atalig can not be convicted for the false statements of Mendiola, Manglona, and Hocog on the basis of vacarious liability by imputing knowledge of falsity. *United States v. Mills,* 810 F.2d 907, 910 (9th Cir. 1987) The evidence does not show that Atalig knew of any false statements in connection with the applications of Mendiola, Manglona and Hocog. *See* Exhibits 2, 2A, 3, 3A, 4, and 4A; Testimony of Mendiola, Manglona, and Hocog. Moreover, the prosecution

does not point to any evidence showing that Atalig personally knew of any false statements in connection with those applications. This requires acquittal on the charges involving those individuals.

## II. ALTERNATIVELY, THE PROSECUTION HAS NOT SHOWN THAT A NEW TRIAL IS NOT WARRANTED UNDER RULE 33

Federal Rule of Evidence 201(a) allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Accordingly, a court may take judicial notice of its records in other cases. *See United States v. Wilson*, 631 F.2d 118, 119-20 (9th Cir.1980). This leaves the issue of whether Atalig was prejudiced by the court not taking notice of when Senator Atalig was convicted.

Noticeably, the prosecution does not contend Atalig was not prejudiced, but instead suggests that Atalig could have cured the prejudice by introducing a certified copy of the jury verdict in Senator Atalig's case. That would not cure the prejudice as Atalig objected to the prosecution introducing any evidence as to the charges on which Senator Atalig was convicted. It is immaterial as to what crimes

Senator Atalig was convicted. Indeed, Atalig considers it irrelevant and unduly prejudicial to introduce evidence that Senator Atalig was convicted of numerous fraud charges.

Moreover, the prosecution attempts to minimize the prejudice by relying on Rule 201(d) which provides for taking judicial notice when the court is presented with the necessary information. However, contrary to the prosecutions's assertion, Atalig, in asking the court to take judicial notice, began giving the date of the conviction when the prosecution objected. It is unnecessary, however, to give a date when the fact is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See Government of Virgin Islands v. Gereau*, 523 F.2d 140, 142 (3rd Cir. 1975)[Facts which are beyond reasonable controversy and which are either matters of common knowledge or capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be considered without first being proved]. The court's own files are accurate and cannot be reasonably questioned. *Baldwin v. Local 843, Intern. Broth. of Teamsters*, 562 F.Supp. 36, 37 (D.C.N.J. 1982)[Federal district court took judicial notice of its own records concerning other proceeding concerning events surrounding matter at issue.

In any event, the prosecution's eliciting testimony of Atalig's intent to run

in the special election to replace Senator Atalig was improper as the prosecution knew such a conversation could not have taken place prior to Supertyphoon Pongsonga. The prosecution's argument that Atalig could have used the documents it provided after the start of trial to impeach Manglona's testimony is the argument expressly rejected in *Bowie*. 243 F.3d 1109, 1117–1119(9th Cir. 2001). As the Ninth Circuit sitting en banc has stated:

> The authentic majesty in our Constitution derives in large measure from the rule of law-principle and process instead of person. Conceived in the shadow of an abusive and unanswerable tyrant who rejected all authority save his own, our ancestors wisely birthed a government not of leaders, but of servants of the law. Nowhere in the Constitution or in the Declaration of Independence, nor for that matter in the Federalist or in any other writing of the Founding Fathers, can one find a single utterance that could justify a decision by any oath-beholden servant of the law to look the other way **when confronted by the real possibility** of being complicit in the wrongful use of false evidence to secure a conviction in court.

*Hayes v. Brown*, 399 F.3d 972, 987 (9th Cir. 2005)(en banc) citing *Bowie*, 236 F.3d at 1096.(emphasis added). It should also be noted that the fact that the false evidence presented dealt only with credibility does not change the materiality calculus. *Hayes*, 399 F.3d at 986.

The prosecution does not dispute that the residence of witnesses Dexter Mendiola and Sydney San Nicholas was material to their case involving their

claims. The court made comments on their residence prior to the introduction of any evidence. A curative instruction was not given. This prejudiced Atalig because "[i]t is well known, as a matter of judicial notice, that juries are highly sensitive to every utterance by the trial judge." *United States v. Stephens*, 486 F.2d 915, 917 n. 1 (9th Cir. 1973). Thus, judicial comments must be aimed at aiding the jury's fact finding duties, rather than usurping them. *Id* at 917. The statements concerning the residence of Mendiola and San Nicholas requires a new trial. *Id*.

## CONCLUSION

The prosecution's opposition to Atalig's post trial motions is not anchored with any legal arguments supported by legal citation or reference to any specific evidence at trial. This strongly suggests that the prosecution's opposition is premised on the assumption or belief that this court will not, under any circumstance, grant an acquittal or a new trial in a criminal case.

Law Office of G. Anthony Long

By: _____
G. Anthony Long