FILED
Clerk
District Court

MAY 24 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. 05-00004 |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | ORDER DENYING |
| ) | MOTIONS FOR ACQUITTAL |
| FERMINA ATALIG, ) | OR, IN THE ALTERNATIVE, |
| ) | FOR A NEW TRIAL |
| Defendant ) | |
| _____ ) | |

THIS MATTER came before the court on Thursday, May 11, 2006, for hearing of defendant's motions for acquittal or, in the alternative, for a new trial. Plaintiff appeared by and through its attorney, Assistant U.S. Attorney Timothy E. Moran, defendant appeared by and through her attorney, G. Anthony Long. Defendant Fermina Atalig was not present.

THE COURT, having considered the written and oral arguments of counsel, hereby denies both motions.

Federal Rule of Criminal Procedure 29(c)(1) provides in part that a "defendant may move for a judgment of acquittal...within 7 days after a guilty verdict."[1] The court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Civ.P. 29(a). There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See* Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Naghani, 361 F.3d 1255, 1261 (9th Cir. 2004).

In her motion for judgment of acquittal, defendant Fermina Atalig argues (1) that there was insufficient evidence that she knew about the applications of Flavian Hocog, Ryan Manglona, and Dexter Mendiola, or that the information contained in the applications was false, (2) that the Federal Emergency Management Agency's ("FEMA") agency jurisdiction over the unemployment benefits program was not proved beyond a reasonable doubt, (3) that there was insufficient evidence that defendant Fermina Atalig knew that the statements in the seven applications were materially false and, thus, that she could not have knowingly and willfully used a false document in regard to those applicants' claims, and (4) that there was insufficient

---

[1] Both Fed.R.Crim.P. 29(c)(1) and 33(a) motions are required to be filed within seven days of the verdict. Here, defendant moved orally for more time in which to file, plaintiff did not object, and the court granted the motion.

evidence to support her conviction for conspiracy.

Knowledge of Falsity of Applications

Defendant argues that there was insufficient evidence that she knew that the applications of Flavian Hocog, Dexter Mendiola, and Ryan Manglona contained false statements.

The court's recollection is that defendant was shown to have known that the representations in the three applications were false, but approved them for payment of benefits in spite of their falsity. Ms. Hocog testified that defendant knew her personally, knew that she was not a farmer, and urged her to apply for benefits anyway. Angelina "Angie" Atalig Manglona testified that she told defendant that Dexter Mendiola lived on Guam, and not Rota, but that defendant still approved his application. Ryan Manglona testified that the defendant knew him and "everybody else on Rota," and therefore knew that his application contained false statements about his residence and employment status. A rational trier of fact could have found defendant guilty beyond a reasonable doubt, based on a theory of direct liability.

Agency Jurisdiction Not Proved

Defendant argues that the federal agency with proper jurisdiction to administer the Disaster Unemployment Assistance ("DUA") program was the U.S. Department of Labor ("USDoL"), and not the Federal Emergency Management Agency ("FEMA"). Thus, because almost all of the evidence referred to FEMA, and not to

USDoL, as the agency responsible for the program, there was insufficient evidence to convict.

The record will show that at least two persons testified that FEMA provided the money that funded the DUA program and that USDoL simply administered the program on FEMA's behalf. The jury could have found, as it did, that the relevant documents in evidence set out the delegation of responsibility between the two federal agencies.

Using a False Document

Defendant argues that there was insufficient evidence to convict her of knowingly and willfully using a false document. This, because the Mayor's Certifications on the applications were immaterial and the definition of "self-employed" to be used when filling out the DUA applications and affidavits was too ambiguous to sustain the convictions.

Plaintiff argues that even if the Mayor's Certifications were immaterial to the issue of knowingly using false documents, it makes little difference because the jury heard witnesses testify that *their* personal applications and affidavits contained false information about their employment status. There was also evidence that defendant knew the information in the applications was false before she approved them. The jury considered defendant's arguments as to whether or not the applicants in question were "self-employed" within the meaning of the DUA program and decided that they

were not, beyond a reasonable doubt. The court cannot say that it was irrational for the jury to have done so. The terms and phrases considered by the jury were not uncommon and were susceptible to common sense interpretation and application to the facts by the jury.

Insufficient Evidence of Conspiracy

Finally, defendant argues that there was insufficient evidence to show that she and Angie Manglona conspired to defraud the United States. The court does not agree.

Witness Manglona testified that, in essence, she carried out whatever instructions defendant gave to her in regards to applicants for DUA assistance, even when she knew the instructions were improper. She filled out Ms. Flavian Hocog's application because defendant had sent her to get DUA help, and Manglona felt she had to assist, even though she knew Ms. Hocog did not qualify for benefits. It was also clear from Manglona's testimony that she knew what she was doing at defendant's behest was wrong and that it would enable people to receive benefits wrongfully. Finally, it was not irrational for the jury to infer that defendant's criminal conduct was motivated in part by her desire for public office, and that she believed that conspiring with Manglona to be the source of federal largesse to potential voters might advance her aspirations in that regard. Again, this was an issue of fact for the jury and their finding of guilt was supported by sufficient evidence and was not

irrational.

Federal Rule of Criminal Procedure 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." When prosecutorial misconduct is claimed, the court is to exercise its sound discretion in deciding whether or not to vacate the judgment and grant a new trial. *See e.g.* United States v. Murillo, 288 F.3d 1126, 1140 (9th Cir. 2002).

In her motion for a new trial, defendant Fermina Atalig argues: (1) that the court, when it read the names of potential witnesses to prospective jurors during *voir dire*, identified two trial witnesses as residing on Guam and Saipan, respectively, and that this information was unduly prejudicial and amounted to court "vouching" for the witnesses since their residence (and, hence, entitlement to the benefits at issue) was an issue of fact to be proved at trial, (2) that the court improperly excluded evidence by not taking judicial notice of Commonwealth Senator Ricardo S. Atalig's date of conviction, (3) by allowing testimony that Senator Atalig had been convicted of fraud, which was unduly prejudicial because defendant Fermina Atalig was also being tried for fraud, and, (4) that allowing testimony of defendant Fermina Atalig's political aspirations was unduly prejudicial.

Unduly Influencing the Jury

As part of the *voir dire* process, the court read a list of twenty-two potential witnesses who might testify during trial. For the tenth name on the list, the court said, "Dexter L. Mendiola from Saipan," and for the twelfth name on the list it said, "Jolene Ramos from Guam."[2] Later, defense counsel moved to dismiss or sever the trial for the two counts involving these two witnesses, on the ground that the court had unduly prejudiced the jury by stating that the witnesses lived elsewhere than on the island of Rota, when their residence was an issue to be proved at trial by the prosecution. The court denied the motion then, and does so again.

First, the court finds it extremely unlikely that its recitation of the list of witnesses who might testify during trial in any way prejudiced the jury panel. At that point in the proceedings, no one knew anything of substance about the case and would not have attached undue importance to a person's residence. Second, jury selection occurred on February 27, 2006. The events the trial was concerned with occurred during the period February-April, 2003. There was nothing in the court's

---

[2] Defendant's written motion was confusing because it identified the second witness as being both Sydney Rosario and Henry San Nicholas. A person named Sidney San Nicholas Rosario was identified as a possible witness during *voir dire*, but it was not until the court listened to the trial tapes that it realized defense counsel had in fact objected to the mention of Jolene Ramos, and not someone surnamed either San Nicholas or Rosario.

recitation which indicated the witnesses' residence during the time the crimes were committed. For those reasons, this aspect of the motion is denied.

Judicial Notice

Defendant asserts that the court erred by failing to take judicial notice of the date Commonwealth Senator Ricardo S. Atalig was convicted.

This exchange occurred on re-cross examination of Angie Manglona by defense counsel:

Q. You stated that---correct me if I'm wrong---that [Fer]mina talked about running for Senator Atalig's seat before typhoon Pongsona?

A. Yes, before.

Q. He wasn't convicted until after Typhoon Pongsana, right?

A. No, it was 2002.

Q. Your Honor, this court can take judicial notice---or, we can do this---the court can take judicial notice----

Court: The court could take judicial notice if the court remembered.

(Chuckle.)

Long: Yeah (chuckle). It was April...I think it was like April 27th, 2003.

AUSA: Objection, Your Honor. The lawyer's testifying.

Long: We can get a certified document.

Court: Sustained.

Long:    We can get a certified document, Your Honor. Okay, no further questions, Your Honor.

Federal Rule of Evidence 201, "Judicial Notice of Adjudicative Facts," provides in relevant part: "(d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information."

Defense counsel seemed to recognize at trial that it was his duty to obtain the record he required and present it properly to the court. This was never done and it is not the court's duty to stop the trial and go search its own records for information of which a party asks it to take judicial notice. This portion of the motion is denied.

Senator Atalig's Conviction

Defendant complains that testimony about the fraud conviction of Commonwealth Senator Ricardo S. Atalig unduly prejudiced her because she was also being tried for fraud. Defendant failed to cite the court to any part of the record to support this assertion. The court found the following:

During Assistant U.S. Attorney Moran's direct examination of witness Angie Manglona, this exchange took place:

Q. Did the defendant run for senator?

A. Yes, the special election.

Q. When was that held?

A. That was November, 2003.

Q. Do you know when she decided to run for senator?

A. Yes.

Q. When was that?

A. Before the typhoon.

Q. How do you know that?

A. Because she told me she's planning to run.

Q. And that was before the typhoon?

A. That was before the typhoon.

Q. How did the defendant do in the election?

A. Again?

Q. How did she do in the election? Did she win?

A. No, she lost.

Q. Did she ever talk to you about having lost the election?

A. Yes.

Q. What did she say?

A. She came in that following week, she reported to work. So---I'm, actually I'm ashamed to go in because I know she feels bad, but I have to go in because that's where my desk is at. So when I went in there she told me that, "I don't know where's all the people that I helped." That's all.

Defense counsel re-visited the issue of the election in his cross-examination of the witness:

Q. Now, you also mentioned that [Fer]mina ran, I guess, for the Senate in November 2004, I mean 2003. Is that correct?

A. Yes.

Q. All right. She ran in a special election, correct?

A. Yes.

Q. And that special election wasn't declared until either June or, I mean, July or August of 2003, correct?

A. Yes.

The prosecutor returned to the subject on re-direct examination:

Q. There were just some questions about defendant's run for the Senate. Whose seat was she running for?

A. Uh, former Senator Rick Atalig.

Q. Is that Rosita Atalig's husband?

A. Yes.

Q. Who got the DUA benefits?

A. Yes.

Q. And why was his seat going to be vacant?

Long: Relevancy, Your Honor. Objection, relevancy.

11

AUSA: Well, he raised it.

Court: The defense brought it up, so I don't know if it's relevant or not.

Long: The prosecution brought it up, Your Honor.

Court: Overruled.

Q. Why was his seat going to be vacant?

A. Because he was sent to jail.

Court: Because why?

A. He was sentenced.

Q. He was sentenced to jail?

A. Yes.

Q. And that was in this court?

A. Uh, yes.

Q. And..so when did she first talk to you about running for that seat?

A. That was before the typhoon, Pongsana.

And again on re-cross examination by defense counsel:

Q. You stated that---correct me if I'm wrong---that [Fer]mina talked about running for Senator Atalig's seat before typhoon Pongsona?

A. Yes, before.

Q. He wasn't convicted until after Typhoon Pongsana, right?

A. No, it was 2002.

If this is the part of the record upon which defendant relies, it simply does not support a conclusion of irrelevance that was so prejudicial that it warrants a new trial, particularly since there was no testimony that Senator Atalig had been convicted of fraud. This portion of the motion is denied.

Prosecutorial Misconduct/Testimony of Defendant's Political Aspirations

Finally, defendant argues that the prosecutor committed misconduct by knowingly allowing false testimony about defendant's alleged desire to run for the Commonwealth Senate and that this false testimony was so prejudicial as to require a new trial. Specifically, defendant alleges that witness Manglona's testimony concerning Atalig's intention to run for political office was false. Again, defendant has not cited the court to the portion of the record which would support her argument. Presumably, the testimony quoted above forms the basis for her complaint.

Defendant appears to argue that because Senator Atalig was not convicted until April, 2003, and she did not file her candidacy papers with the Commonwealth Election Commission until August, 2003, she could not have discussed a possible candidacy with witness Manglona in December, 2002. First, defendant's conclusion is not compelled by logic. It is not impossible to conclude that she was considering a candidacy many months before filing her papers with the Election Commission. Second, while Senator Atalig's conviction may have contributed to her final decision,

13

there is no reason why she could not have been pondering a run after his indictment but well before his conviction. Finally, the court's recollection is that defendant did not use the documents she complains of to attack witness Manglona's testimony during cross-examination. The jury was free to accept or reject the credibility of Manglona's testimony. The court finds no support for the allegation that the prosecutor acted improperly and this portion of the motion is also denied.

FOR THE REASONS STATED ABOVE, defendant Fermina Atalig's motions for acquittal and for a new trial are denied.

IT IS SO ORDERED.

DATED this 24th day of May, 2006.

_____
ALEX R. MUNSON
Judge