FILED
Clerk
District Court

DEC - 5 2007

**FOR PUBLICATION**

For The Northern Mariana Islands

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

(Deputy Clerk)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>         *Plaintiff-Appellee,*<br><br>              v.<br><br>FERMINA ATALIG,<br>         *Defendant-Appellant.* | No. 06-10511<br>D.C. No.<br>CR-05-00004-ARM<br>OPINION |

Appeal from the United States District Court
for the Northern Mariana Islands
Alex R. Munson, Chief District Judge, Presiding

Argued and Submitted
June 8, 2007—Honolulu, Hawaii

Filed September 6, 2007

Before: Arthur L. Alarcón, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

---

### SUMMARY

#### Criminal Law and Procedure/Evidence

The court of appeals affirmed a judgment of the district court. The court held that the false statement statute, 18 U.S.C. § 1001, does not require the government to prove which particular agency within the executive branch maintains jurisdiction over the matter involving the submission of false statements.

11733

Appellant Fermina Atalig was charged in district court in the Northern Mariana Islands with conspiracy to submit false claims to the government in violation of §§ 287 and 1001, and making false statements in violation of § 1001, in connection with her administration of a Disaster Unemployment Assistance (DUA) program developed by the Federal Emergency Management Agency (FEMA) to assist Rota Island residents who lost their jobs as a result of Super Typhoon Pongsona. A jury found that Atalig knowingly made material false statements when submitting applications for DUA benefits on behalf of claimants.

Atalig appealed her conviction, arguing that the evidence proved that the Department of Labor, rather than FEMA, maintained exclusive jurisdiction over the DUA benefits wrongfully paid to claimants.

[1] In 1996, Congress amended the "jurisdictional" element of § 1001. Section 1001 previously specified that the matter pertaining to the false statements had to be within the jurisdiction of any department or agency of the United States. The 1996 amendment broadened the scope of the statute to include any matter within the jurisdiction of the executive, legislative, or judicial branch of the government of the United States. [2] Even assuming that proof that a particular federal agency within the executive branch held jurisdiction was previously required, the 1996 amendment removed the statutory language on which such a defense could have been based. Congress made clear its intent to apply false statement liability under § 1001 to all three branches of the federal government, subject to a few limitations not applicable to Atalig's appeal. [3] As a result, the only concern was whether Atalig's false statements supporting the false claims for benefits fell within the jurisdiction of the executive branch.

[4] The false statements Atalig made in preparing the DUA benefit claim forms on behalf of Rota residents related to a federally funded program. There was a direct relation between

the falsity of Atalig's statements and the executive branch's function of expending federal disaster payments through the DUA program. It had to be concluded that there was sufficient evidence to prove the federal jurisdictional element supporting Atalig's § 1001 convictions. [5] Sufficient evidence also supported the jury's verdict on the remaining four elements of the § 1001 offenses, as well as the jury's verdict on the conspiracy count. The evidence revealed a pattern of improper payments to claimants who were not in fact deprived of a living as a direct result of the typhoon. The judgment of the district court had to be affirmed.

## COUNSEL

Timothy E. Moran, Assistant United States Attorney, United States Attorney, Districts of Guam and the NMI, Saipan, MP, for the plaintiff-appellee.

George Anthony Long, San Jose, Saipan, MP, for the defendant-appellant.

## OPINION

TALLMAN, Circuit Judge:

Fermina Manglona Atalig appeals her conviction for conspiracy to submit false claims to the United States in violation of 18 U.S.C. §§ 287[1] & 1001[2] and seven counts of making

---

[1] Section 287 provides that "[w]hoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years."

[2] Section 1001(a) makes criminal the acts of any person who, "in any

11736   United States v. Atalig

false statements in violation of § 1001. A jury in the Northern Mariana Islands found that Atalig knowingly made material false statements when submitting applications for federal Disaster Unemployment Assistance ("DUA") benefits on behalf of Rota residents. We hold that the false statement statute does not require the government to prove which particular agency within the executive branch maintains jurisdiction over the matter involving the submission of false statements, and we find that sufficient evidence existed to support Atalig's fraud conviction.[3] We have jurisdiction under 28 USCA § 1291, and we affirm.

I

Super Typhoon Pongsona struck Rota Island in the Commonwealth of the Northern Mariana Islands on December 7, 2002. President George W. Bush declared Rota a major disaster area,[4] and the Federal Emergency Management Agency ("FEMA") developed an assistance package for the island, including benefits under the DUA program. DUA cash payments were available to individuals who lost their employment or livelihood as a direct result of the typhoon. *See generally* 42 U.S.C. § 5177; 20 C.F.R. § 625.4.

The Mayor of Rota appointed Atalig to administer the DUA program. In her capacity as the coordinator, Atalig pre-

---

matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation."

[3] In a separately-filed Memorandum disposition we address the other issues raised by Atalig on appeal.

[4] The Robert T. Stafford Disaster Relief and Emergency Assistance Act authorizes the President to declare a "major disaster" when "the disaster is of such severity and magnitude that effective response is beyond the capabilities of the State and the affected local governments and that Federal assistance is necessary." 42 U.S.C. § 5170.

pared advertisements alerting Rota's 3200 residents of the availability of benefits, took applications, and made the final determination of eligibility. FEMA relied on Atalig's eligibility determinations, and Atalig controlled all access to the actual applications and files. She certified or caused others to certify each claimant's eligibility for the DUA payments.

The evidence presented at trial showed that Atalig had a close relationship with all of the applicants and that, in many cases, she filled in large portions of each application for them without asking any questions. The evidence also showed that Atalig took steps to substantiate her false claims and thwart detection of the fraud. In May 2003, Atalig learned that a public auditor planned to inspect the claims files, and she directed her subordinates to place a copy of a Mayor's Certification form in each applicants' folder. The form purportedly certified that each applicant was either a farmer or fisherman whose crops or livelihood had been damaged by the storm. However, as Angie Manglona ("Angie") testified, Atalig had obtained a blank, signed certification form. She then copied the original and asked either Angie or Marita Manglona to fill in the form with the applicants' name and place the form in the applicants' folder.

On January 27, 2005, Atalig was indicted on one count of conspiracy to submit false claims and seven counts of making false statements. The Indictment alleged that Atalig, "in a matter within the jurisdiction of the executive branch of the Government of the United States, namely, within the jurisdiction of FEMA and of the Department of Labor, . . . knowingly . . . used false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements." During trial, the jury heard evidence that the United States Department of Labor coordinated the DUA program and FEMA provided the funding. The district court also admitted into evidence the DUA Handbook, which sets forth the jurisdictional responsibilities of the executive agencies that provide disaster relief.

As explained in the DUA Handbook, the President delegated his responsibilities and functions under the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") to the Director of FEMA. Exec. Order No. 12,673, 54 Fed. Reg. 12,571 (March 23, 1989). Previously, subject to general policy guidance, the Director of FEMA delegated most of this authority to the Secretary of Labor. FEMA, Delegation of Authority to the Department of Labor, 51 Fed. Reg. 4988-03 (Feb. 10, 1986). Under that delegation, which remained in place after the passage of the Stafford Act, FEMA maintained some authority to administer and enforce the program. *See id.* at 4988-4989 ("With the concurrence of the Director of [FEMA], the [Secretary of Labor has the] authority to issue such rules and regulations as may be necessary and appropriate to effectuate this delegation.").

At the close of trial evidence, the district court instructed the jury that the substantive offense of making false statements required the government to prove that "[Atalig] made or used a writing or document which contained a false statement in a matter within the jurisdiction [of FEMA]." On appeal Atalig argues that the evidence proved that the Department of Labor, rather than FEMA, maintained exclusive jurisdiction over the DUA benefits wrongfully paid to claimants. But, as we explain below, because of a statutory change this argument is unavailing.

II

We review de novo a district court's denial of a motion for judgment of acquittal based upon insufficient evidence. *United States v. Bello-Bahena*, 411 F.3d 1083, 1087 (9th Cir. 2005). We must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gonzalez-Torres*, 309 F.3d 594, 598 (9th Cir. 2002). We review de novo ques-

tions of statutory interpretation. *United States v. McNeil*, 362 F.3d 570, 571 (9th Cir. 2004).

A conviction under § 1001 requires the government to prove (1) a statement, (2) falsity, (3) materiality, (4) knowledge, and (5) jurisdiction. 18 U.S.C. § 1001; *United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir. 2004). Under § 287, the government must prove that the defendant (1) presented a claim against the United States and (2) knew such claim to be false. 18 U.S.C. § 287; *United States v. Causey*, 835 F.2d 1289, 1292 (9th Cir. 1987).

### III

[1] In 1996, Congress amended the "jurisdictional" element of § 1001. *See* False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459, 3459 (codified as amended at 18 U.S.C. § 1001 (2000)). The prior statutory language had specified that the matter pertaining to the false statements must be "within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1001 (1996). The 1996 amendment broadened the scope of the statute to include any matter "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. at 3459. Relying on the pre-amended version of § 1001, in conjunction with our decision in *United States v. Facchini*, 874 F.2d 638 (9th Cir. 1989) (en banc), Atalig argues that the government bore the burden of proving which specific agency within the executive branch maintained jurisdiction over the matter related to the false statements.

In *Facchini*, interpreting the old statutory language, we held that a federal agency has "jurisdiction" for purposes of § 1001 if the false statements "concern the authorized functions of an agency or department rather than matters peripheral to the business of that body." *Id.* at 641 (internal quotation marks omitted). There we said that the agency must

11740                UNITED STATES v. ATALIG

have "the power to exercise authority in a particular situation." *Id.* (internal quotation marks omitted). When the federal agency funds the benefits provided by a certain program, i.e., unemployment insurance, that agency has jurisdiction for purposes of § 1001. *Id.* at 640, 643.

[2] Even if we assume that *Facchini* required proof that a *particular* federal agency within the executive branch held jurisdiction, the 1996 amendment removed the statutory language on which such a defense could have been based. *See McNeil*, 362 F.3d at 573-74 (stating that we must reevaluate decisions that rely on older versions of the statutes).[5] In *Hubbard v. United States*, 514 U.S. 695 (1995), the Supreme Court narrowed the scope of the false statement statute by holding that "a federal court is neither a 'department' nor an 'agency' within the meaning of § 1001." *Id.* at 715. Congress responded by amending § 1001 to encompass any activity "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." *See* False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. at 3459. Rather than basing § 1001 liability on the technical definitions of the terms "department" or "agency," Congress made clear its intent to apply false statement liability under § 1001 to all three branches of the federal government, subject to a few limitations pertaining to the legislative and judicial branches not applicable to this appeal. *See* H. R. Rep. 104-680, *as reprinted in* 1996 U.S.C.C.A.N. 3935, 3935.

---

[5]Two of this court's post-1996 published opinions fail to note the effect of the 1996 amendment to § 1001 on prior case law. *See United States v. Jiang*, 476 F.3d 1026 (9th Cir. 2007); *Camper*, 384 F.3d 1073. Neither of these cases, however, had reason to address whether the "agency jurisdiction" requirement survives those amendments. *See Jiang*, 476 F.3d at 1031 (concluding that there was insufficient evidence to prove that the defendant knowingly made a false statement); *Camper*, 384 F.3d at 1075 (stating that the defendant contested only the falsity element).

UNITED STATES v. ATALIG     11741

[3] Therefore, our only concern here is whether Atalig's false statements supporting the false claims for benefits fell within the jurisdiction of the executive branch. A matter is "within the jurisdiction" of the executive branch "when it has the power to exercise authority in a particular situation." *United States v. Rodgers*, 466 U.S. 475, 479 (1984); *see also Facchini*, 874 F.2d at 641.

In *Facchini*, we held that the Department of Labor did not have jurisdiction when the defendants gave false statements to receive benefits under a state-funded unemployment insurance program administered by Oregon but authorized by the Secretary of Labor. 874 F.2d at 643. Although the Department of Labor approved Oregon's unemployment plan and provided funds for "the proper and efficient administration" of the state unemployment insurance laws, the Department did not provide one cent of federal money to pay the actual unemployment benefits. *Id.* at 640. However, we held that the Department of Labor *did* have jurisdiction over a second group of defendants when it was the Department of Labor, and not the state, that paid the benefits with federal funds. *Id.* at 643. We relied on two factors: (1) the Act in question explicitly provided that any applicant making false statements was subject to prosecution under § 1001 and (2) the unemployment benefits were federally funded. We held, because the false statements resulted in benefits being paid from the federal budget, "there [wa]s a direct relation between the falsity of those statements and the Department of Labor's statutory function of certifying the payment of federal money for unemployment compensation." *Id.*

[4] Atalig's actions here are no different in kind from the statements involving the second group of defendants in *Facchini*. The false statements she made in preparing the DUA benefit claim forms on behalf of Rota residents related to a federally funded program. There was a direct relation between the falsity of Atalig's statements and the executive branch's function of expending federal disaster payments through the

DUA program. *Cf. Facchini*, 874 F.2d at 643. We have no difficulty in concluding that there was sufficient evidence to prove the federal jurisdictional element supporting Atalig's § 1001 convictions.

[5] We also find that sufficient evidence supported the jury's verdict on the remaining four elements of the § 1001 offenses, as well as the jury's verdict on the conspiracy count. The evidence revealed a pattern of improper payments to claimants who were not in fact deprived of a living as a direct result of the typhoon. In some cases, the claimants did not even live on Rota at the time of the storm. Atalig knew each of the claimants extremely well (the island is quite small and the claimants of each count of conviction were either her relatives or her friends), and she directed her subordinates to place fraudulent certification forms in each of the applicants' folders in an effort to escape detection of the false claims by a public auditor. Angie's testimony that she knowingly made false statements on applications to carry out Atalig's command to "help everyone" who filed for DUA benefits sufficed to sustain Atalig's conspiracy conviction as well. *See* 18 U.S.C. § 371.

**AFFIRMED.**

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.